IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

SALVADOR PINEIRO DÍAZ, et als.,

    Plaintiffs,

       v.

ADCHEM PHARMA OPERATIONS, et als.,

    Defendants.

CIVIL No. 04-1522 (DRD)

CLASS ACTION COMPLAINT

## OPINION AND ORDER

Before the Court are defendants SB Pharmco P.R., Inc.'s (incorrectly denominated Glaxo SmithKline) and Elly Lilly Export, S.A. (Puerto Rico Branch)'s ("Lilly") Motion for Rule 11 Sanctions, thereafter joined by Bristol-Myers Barceloneta, Inc. ("Bristol-Barceloneta"), Bristol-Myers Squibb Holdings Pharma, Ltd. ("Bristol-Manatí"), Bristol Squibb Manufacturing Company ("Bristol-Humacao"), Bristol-Myers Squibb Manufacturing Company and Bristol-Myers Squibb Caribbean Company (jointly referred to as "Bristol-Mayagüez") collectively referred to as "the BMS defendants" and plaintiff's opposition thereto.  The Court herein refers to the moving parties collectively as "co-defendants".  Also before the Court are co-defendants' respective motions under seal supplementing their request and providing information regarding the amount of attorneys fees incurred as ordered by the Court.  Plaintiffs' opposition to these last set of motions will be stricken from the record as untimely.  The supplements submitted in compliance with the Courts orders will, therefore, be deemed submitted without opposition.[1]

_____

[1]Through order dated August 5, 2005, the Court granted plaintiffs an extension until August 12, 2005 to file their opposition to co-defendants' submissions in connection to the Rule 11 request for economic sanctions.  Said order clearly stated "plaintiffs are forewarned that failure to file within

-2-

Before delving into the merits of the request, a review of the relevant aspects of this case's protracted, circuitous, and tortuous road.

## PROCEDURAL BACKGROUND

The present lawsuit was filed on June 1, 2004 by Salvador Piñero Díaz ("Piñero-Díaz"), his spouse Milagros Figueroa ("Figueroa"), and the conjugal partnership constituted between them, "on behalf of themselves and others similarly situated," against 20 pharmaceutical Companies in Puerto Rico, including SB Pharmco, Lilly and the four BMS defendants, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, Puerto Rico wage and hour laws—i.e., Law 180 of July 27, 1998, P.R. Laws Ann. tit. 29, § 250; Law 379 of May 15, 1948, P.R. Laws Ann. tit. 29, § 271—and Article 1802 of the

---

the given deadline shall be deemed by the Court as a waiver of opposition. ABSOLUTELY, ANY FURTHER EXTENSIONS OF TIME SHALL BE SUMMARILY DENIED." See Dkt. No. 115 Plaintiffs' belated filing on August 18, 2005 of a Response to Motion Under Seal in Compliance with Court Order is a blatant disregard of this Court's mandate, not to mention a rather unsubtle attempt to circumvent the clear warning regarding no further extensions.

"In an era of burgeoning case loads and thronged dockets, effective case management has become an essential tool for handling civil litigation." O'Connell v. Hyatt Hotesl of Puerto Rico, 357 F.3d 152 (1st Cir. 2004). It is Rule 16 which provides the court with devices, like a scheduling order, necessary to manage its docket. See Fed.R.Civ.P. 16. Moreover, in order for Rule 16(b) to be effective, the courts cannot allow litigants to treat scheduling orders "as a frivolous piece of paper idly entered, which can be cavalierly disregarded without peril" as has been abused in the instant case. See O'Connell, 357 F.3d at 155. "[T]he effective administration of justice requires that trial courts possess the capability to manage their own affair." Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed.2d 27 (1991), quoting Chamorro v. Puerto Rican Cars, Inc., 304 F.3d 1, 4 (1st Cir. 2002). Furthermore, counsel do not run the court. Thus, parties have an "**unflagging duty to comply with clearly communicated case-management orders."** Díaz v. González, 140 F.3d 312, 315 (1st Cir. 1998) (emphasis added). It is self-evident that "courts cannot function if litigants may, with impunity, disobey lawful orders." Chamorro v. Puerto Rican Cars, Inc., 304 F.3d at 5, HMG Prop. Investors, Inc. V. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 916 (1st Cir. 1988). The court finds that plaintiffs have failed to be **reasonably** diligent. The court does not have the "obligation to play nursemaid to indifferent parties." Pinto v. Universidad de Puerto Rico, 895 F.2d 18, 19 (1st Cir. 1990). Therefore, the court has no other alternative in order to cause respect and dignity to its order than to strike the out of bounds filing made by defendants.

-3-

Puerto Rico Civil Code, P.R. Laws Ann. tit 31, § 5141. The Complaint was filed as a "class action". At paragraph 2 of the Complaint, Piñero-Díaz identified himself as being "of legal age, married to Milagros Figueroa *an employee of **one of the Defendants*** and a legal resident of Puerto Rico." See Dkt. No. 2, Class Action Complaint at ¶ 2 (emphasis added).  Nowhere in the Complaint did Piñero-Díaz identify which of the 20 companies included as defendants was his employer.  On  the other hand, at paragraph 13, plaintiffs averred that "[a]t all times pertinent to this cause of action, Plaintiffs have been or were employed by the Defendants . . . ."  See id. at ¶ 13.  Notably, however, Piñero-Díaz was the only individual purporting to have an employment relationship, albeit unspecified, with the defendants.  Nonetheless, plaintiffs further averred that class certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure "was the only appropriate means of resolving this controversy because the class members are not aware of their rights. . . ."  See Id. at ¶ 63.  Plaintiffs are represented in this endeavor by attorney Carlos Rodríguez-García ("Rodríguez-García").

On August 25, 2004, before any of the defendants had made an appearance, plaintiff Piñero-Díaz and his spouse voluntarily moved to withdraw their claims against one of the  defendant companies, Novo Nordisk Pharmaceuticals ("Novo Nordisk"), and also informed their intent to amend their Complaint to include additional defendants.  Plaintiffs averred in this motion that  their claims "were directed to those pharmaceutical manufacturing concerns that develop, manufacture, produce, package and transport pharmaceuticals under the  supervision of the Federal Food and Drug Administration."  See Dkt. No. 3, First Motion for Voluntary Dismissal at ¶ 3.   Plaintiffs further averred at paragraph 5, that after conversations with Novo Nordisk's legal representative they had come upon information to the effect that Novo Nordisk did not have manufacturing facilities in Puerto Rico and, accordingly, they had agreed to withdraw their claims with prejudice.  Plaintiffs

-4-

went on to describe a "pattern and practice that permeates the whole pharmaceutical industry in Puerto Rico" by sole virtue of the existence of FDA and state regulations, see id. at ¶ 15, and explained that pursuant to inquiries made to the Pharmaceutical Industry Association in Puerto Rico, plaintiffs "had learned of other potential Defendants that incur in the wilful and [sic] pattern of practice of breaching the FLA [sic] and other federal state statutes regarding wages and salaries of their employees." See id. at ¶ 16.  Plaintiffs' counsel nowhere enlightened the Court as to the nature of the inquiries made to the Pharmaceutical Industry Association, nor the information obtained in response thereto.

That same date plaintiffs filed a "First Amended Class Action Complaint" which included eighty (80) named plaintiffs and added eighteen (18) pharmaceutical companies, for a sum total of thirty-eight (38) named defendants.  At paragraph 3 of the Amended Complaint, plaintiffs averred that "[a]t all times herein material plaintiffs were a [sic] employees of one of the named Defendants with an indefinite employment contract in its facilities located in Puerto Rico."   Nowhere in the Complaint did any of the plaintiffs identify which of the defendants companies was his/her respective employer.  Once again, they averred at paragraph 16 that "[a]t all times pertinent to this cause of action, Plaintiffs have been or were employed by the Defendants . . . ."  See id. at ¶ 13.

Of critical importance is the fact that, while conclusively averring that all defendants violated FLSA provisions in a variety of ways, with particular emphasis being placed in practices related to the donning and doffing of clothes and other alleged preliminary and postliminary activities, plaintiffs did not include any specific factual allegation in support of the generalized statement in the case's caption and at paragraph 4 of the Amended Complaint that there were other individuals "similarly situated."  See id.

-5-

Notwithstanding the fact that the Amended "Class Action" Complaint included a request that the complaint be certified as a class action under the mechanism of Rule 23(b)(2) of the Federal Rules of Civil Procedure, also on August 25, 2004, plaintiffs filed a Motion Requesting Court Sponsored Notice which referenced opt-in actions under § 216 of the FLSA and included some discussion of the normative Supreme Court case <u>Hoffmann-LaRoche v. Sperling</u>, 493 U.S. 165 (1989).  <u>See</u> Dkt. No. 6 ¶¶ 2, 7-8; 29 U.S.C. § 216.

Also on August 25, 2004, plaintiffs' withdrew their claims against another one of the named defendants, Amgen Manufacturing Ltd., on the basis of representations made by their counsel regarding their compensation practices.  <u>See</u> Dkt. No. 5.  Plaintiffs' requests for voluntary dismissal of claims against Novo Nordisk and Amgen Manufacturing Ltd. were granted by the Court on November 2, 2004.  <u>See</u> Dkt. No. 8.  Thereafter, on November 4, 2004, plaintiffs filed a third motion to withdraw claims against two more named defendants, Bayer of Puerto Rico, Inc and Sanofi-Synthelabo, quoting representations from their respective counsels regarding the absence of manufacturing operations in Puerto Rico.[2]  <u>See</u> Dkt. No. 10.

On November 8, 2004, Lilly and SB Pharmco,[3] after having received a request for waiver of summons, filed a joint Motion for a More Definite Statement requesting specific information regarding plaintiffs' contentions as to the existence of an employment relationship and as to the identity of the employees corresponding to each of the appearing co-defendants' employer, as well as dates of employment.  <u>See</u> Dkt. No. 11.  Simply stated the request constituted a reasonable inquiry

---

[2]The request was granted on January 28, 2005 and judgment entered accordingly that same date.  <u>See</u> Dkt. No. 49.

[3]ICN Puerto Rico, Inc. was also a proponent of this motion.

-6-

to connect and identify each plaintiff with the corresponding co-defendant employer.  That same date, these defendants further,Lilly, SB Pharmco, opposed plaintiffs' Request for Court Sponsored Notice as premature.  See Dkt. No. 12.  In this last motion, co-defendants Lilly and SB Pharmco pointed out gross deficiencies in plaintiffs' pleading and complained about plaintiffs' unabashed attempts to circumvent procedural requirements particularly applicable to actions under §216(b) of the FLSA.  Furthermore, as evidenced by an exhibit attached to a subsequent motion, on November 3, 2004,  these two defendants sent plaintiffs' counsel a letter pointing out multiple violations to Rule 11 and inviting him to withdraw the Complaint against them.  See Dkt. No. 18, Mot. R.11 Sanctions, Exh. 1.

On December 14, 2004, after having complied with the procedural requirements of Rule 11, co-defendants SB Pharmco and Lilly filed a Motion for Sanctions Under Rule 11, which finally brings to the court to the matter pending before the Court.  See Dkt. No. 18.  The Motion for Sanctions argued that plaintiffs' counsel's insistence on advocating claims against them under the FLSA, FMLA and various local statutes was unwarranted by existing law and contrary to the mandate of Rule 11.  Plaintiffs did not oppose co-defendants' motion within the time period prescribed by Local Rule 7.1(b)[4] nor did they timely request an enlargement of time to respond.  Among other criteria, SB Pharmco and Lilly argued the absence of a reasonable pre-filing inquiry with respect to plaintiffs' claims under FLSA, FMLA as well as issues of standing (including absence of an employment relationship), joinder, "class certification," damages and claim periods.

---

[4]Local Rule 7.1(b) provides that "[u]nless within ten (10) days after service of a motion the opposing party files written objection thereto, incorporating a memorandum of law, the opposing party shall be deemed to have waived the objection."  This 10-day term is calculated in accordance to Rule 6(a) of the Federal Rules of Civil Procedure.  An additional three (3) days to respond are allowed as per Local Rule 5.1.(e).

-7-

Notwithstanding all the aforementioned motions filed by co-defendants which repeatedly highlighted the deficiencies of plaintiffs' pleading, on December 15, 2004, plaintiffs without having first obtained leave of Court as required by Local Rule 7.1(c), filed an untimely Reply to SB Pharmco and Lilly's Opposition to Court Sponsored Notice insisting upon their right to a court sponsored notice to all potential "opt-ins" at such early stage of the proceedings.  See Dkt. No. 19. Plaintiff's further informed the Court that they had served upon  defendants discovery requesting the names and addresses of employees "similarly situated."  See id. at ¶ 27.

As procedural matters then stood,  the Court scheduled a status conference for February 14, 2005.  See Dkt. No. 23.  In the meantime, on December 27, 2004, once again without first obtaining leave of Court as required by Rule 15(a), plaintiffs filed a Second Amended Complaint which neglected to address any of the substantive or procedural issues noted in the Motion for a More Definite Statement or the Motion for Sanctions.[5]  See Dkt. No. 24.   On December 28, 2004, plaintiffs filed an Amended Motion to Withdraw without Prejudice claims against various defendants and substituted the names of various others, including SB Pharmco's.[6]   In said motion plaintiffs averred they were entitled to amend their pleading once as of course, neglecting to consider the

---

[5]Rule 15(a) of the Federal Rules of Civil Procedure provides that "[a] party may amend the party's pleading *once* as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party . . . ." Fed. R. Civ. P. 15(a) (emphasis added). In this case, plaintiffs filed an initial Complaint on June 1, 2004. See Dkt. No. 1.  Subsequently, on August 25, 2004, they filed an Amended Complaint, exhausting their single opportunity to amend the complaint as a matter of course.  Plaintiff is barred from amending  their Complaint a second time without first obtaining leave from the court to amend, except by concept from plaintiff.

[6]On December 27, 2004 plaintiffs had filed a Motion to Withdraw without Prejudice and Amend Pleadings, which was an exact copy of the Motion for Voluntary Withdrawal filed on August 25, 2004.  See Dkt. No. 3.  This motion requested, yet again, dismissal of the claims against Novo Nordisk as to which Judgment had already been entered and an issuance of summons as to which an ordered had already been entered. see Dkt. Nos. 8 & 9.  The motion was subsequently amended on December 28, 2004, to note an erroneous filing.   See Dkt. No. 27 and Docket Text Modification.

-8-

effects of their prior amendment of August 25, 2004.   Plaintiff again made reference to inquiries made with the Pharmaceutical Industry Association in Puerto Rico.

Then, on January 20, 2005, plaintiffs filed a motion to Stay Issues Pending to Court Sponsored Notice stressing defendants contentions regarding the absence of an employment relationship and urging that notice to potential class members would resolve the matter.  Utterly failing to realize that such action constituted putting the cart before the horse, Plaintiffs' counsel submitted to the Court that such notice would allow plaintiffs to detail the dates of employment and other discoverable information to defendants "which would lead to the abandonment of several of the Defendants averments . . . . that the Plaintiffs are not or were not their employees, for the applicable period of the complaint." See Dkt. No. 36 at ¶ 5.

On January 24, 2005 the BMS defendants appeared for the first time requesting an extension of time to answer or otherwise plead.  See Dkt. No. 41.  In said motion they noted that four different corporate entities had been served with process and copy of the Second Amended Complaint, (the complaint not previously authorized by the Court), and that two of them BMS-Barceloneta and BMS-Manatí had also previously received requests for waiver of process for which plaintiffs did not wait before serving process.  For purposes of simplicity, all four of them waived service of process and agreed to file a responsive pleading on behalf of all of the BMS defendants on the same date and, accordingly, requested an extension to so proceed.

On February 14, 2005, the Court held a status conference wherein the court  particularly noted  concerns regarding plaintiffs' pleading and suggested to counsel Rodríguez-García that he conduct some "house-cleaning."  Plaintiffs were granted until February 25, 2005 to inform the Court which plaintiffs remained in the case and enumerating which defendants were to remain and which

were to be released.  Plaintiffs were further granted until March 4, 2005 to file oppositions to the pending motions including the Motion for a More Definite Statement and Motion for Sanctions presently under consideration.  See Dkt. No. 116.  The Court set a second status conference for April 22, 2005.

On February 23, 2005 the BMS defendants joined Lilly's and SB Pharmco's Motion for a More Definite Statement noting the absence of information regarding each plaintiffs' purported employer.  See Dkt. No. 82.  That same date, plaintiffs filed a Motion for Voluntary Dismissal and other "House Cleaning" Matters in which they stated their intention to proceed only against Bristol Myers PR Inc. and/or Bristol Myers Squibb P.R. Inc.[7]  See Dkt. No. 83 at ¶ 4.  Notwithstanding the foregoing statement, at paragraph 3(j) of their motion plaintiffs listed Bristol Myers PR Inc. among the parties against which they were voluntarily withdrawing their claims.  Plaintiffs further averred their request for dismissal rendered moot various motions, including the Rule 11 Motion for Sanctions and the Motion for a More Definite Statement.  Plaintiffs' motion included as attachments 31 "Opt-in" documents which, again, failed to identify the name of each appearing individual's employer.

On March 10, 2005 the BMS defendants filed an Opposition to Plaintiffs' Request for Voluntary Dismissal & Other "House Cleaning" Matters noting the inconsistency in plaintiffs' averments as to them.  The BMS defendants further requested that plaintiffs specify against which BMS company in particular they intended to proceed.  To this effect, the BMS defendants noted that there were at the time several companies operating in the Island, all associated  to the Bristol Myers family of companies.  They clarified that although reference is made in the caption of the case to two

---

[7]Particularly, this corporate entity had not made an appearance in this case.

-10-

BMS companies, no BMS company operates under either of these names.  Moreover, all four of the companies appearing in the case were separately served with process.  See Dkt. No. 85 at ¶ 3.  Further, the BMS defendants reaffirmed their request for a more definite statement and objected to plaintiff's suggestion that said request had been rendered moot by their voluntary dismissal.  Finally, the BMS companies joined the request for Rule 11 sanctions.

Also on March 10, 2005 co-defendants Lilly and SB Pharmco opposed plaintiff's Motion for Voluntary Dismissal objecting to plaintiffs' statement that the pending Rule 11 Motion for Sanctions was rendered moot by their voluntary dismissal.  Lilly and SB Pharmco noted that they had been "urging plaintiffs for the voluntary dismissal of their claims since November 3, 2004, plaintiffs, however paid no heed and forced defendants to incur in the costs of defending against the suit." See Dkt. No. 87.  Lilly and SB Pharmco, accordingly, requested that the Court consider the merits of the request for Rule 11 economic sanctions notwithstanding the voluntary dismissal.

On March 14, 2004 plaintiffs filed an Informative Motion correcting clerical error and indicating they wished to proceed against Bristol Myers PR, Inc and/or Bristo Myers Squibb PR, Inc.  See Dkt. No. 88.  Plaintiffs, once more, failed to identify the employer(s) of the named plaintiffs in that they did not identify for which particular corporate entity of the four appearing BMS companies they currently worked or had worked.

On March 29, 2005 the Court denied plaintiffs' request for Court sponsored notice without prejudice.  In its Order the Court noted plaintiffs had failed to meet their burden of establishing that the putative class members were similarly situated under the FLSA.  The Court noted "plaintiff have done nothing more than identify some 31 individuals who, we can only assume worked [for any one

-11-

of four (4) different employers bearing the Bristol name], and the mere listing of names, without anything more, is insufficient to authorize notice . . . ."  See Dkt. No. 90.

The Court held a second status conference on April 22, 2005 to discuss the pending Motion for Sanctions by Lilly & SB Pharmco which was subsequently joined by the BMS defendants and the Motion for More Definite Statement, now under BMS sponsorship.  During said conference the parties discussed the inadequacies of plaintiffs' complaint. Among other matters, the Court ordered co-defendants to submit, under sworn statement and under seal, the total amount of attorneys fees incurred by each one.  During said conference, plaintiffs counsel openly admitted that prior to filing the Complaint no employee or former employee of either Lilly or SB Pharmco had engaged his legal services.

Co-defendants complied with the Court order, and on April 29, 2005 filed supplements to their Motion for Rule 11 sanctions providing information regarding the fees incurred.  See Dkt. Nos. 98 & 99.  All three parties noted in their submission  that "given the fact that the [firm of Schuster Usera & Aguiló LLP] represented a number of defendants in the case, time devoted to projects which benefitted all was divided among them in order to avoid duplication and minimize expense."  In their submission the BMS defendants noted plaintiffs' counsel's admissions during the last status conference to the effect that, prior to the filing of the original Complaint, he had discussed with counsel for BMS, Rafael Aguiló-Vélez, the fact that all of his clients were employees of the BMS Barceloneta subsidiary.  See Dkt. No. 99 at ¶ 3.  Consequently, at the time the original Complaint was filed and subsequently, plaintiffs' counsel knew he had no basis to include in the Complaint the Manatí, Mayagüez and Humacao subsidiaries, not to mention Lilly, SB Pharmco and the rest of the named defendants.

-12-

Having neglected to comply with this Court's order provided during the February, 2005 status conference granting them until March 4, 2005 to oppose the pending Motion for Rule 11 Sanctions, on May 11, 2005 plaintiffs requested yet another extension of time to file their opposition to the same.  See Dkt. No. 100.  This request was granted by the Court on May 29, 2005 advising categorically plaintiffs "THIS IS THE LAST EXTENSION OF TIME GRANTED."  See Dkt. No. 101.

Finally, on June 3, 2005, almost 6 months after co-defendants filing of their Motion for Rule 11 Sanctions, plaintiffs filed their opposition.  See Dkt. No. 102.  In connection to his pre-filing obligation, attorney Rodríguez-García verified that during the past eight (8) to ten (10) years he had been actively litigating an identical cause of action in state court against Warner Lambert, Inc. during which he met with most of the one hundred twenty-five (125) plaintiffs appearing therein.  During the course of one of these meetings Mr. Rodríguez-García met with two unidentified individuals[8] who informed him that they worked for Lilly and that they had been denied overtime, second meal period, rest period and described their donning and doffing practices.  Admittedly, Mr. Rodríguez-García failed to write any where  the names of these two individuals, nor can could he recall their names at this time.  They were, however, advised to contact Mr. Rodríguez-García at a later time in order to present a claim.  It seems evident from counsel's failure to recall their names and the potential clients subsequent inaction that these individuals never retained Mr. Rodríguez-García's services and are not plaintiffs in this case.  Nevertheless, plaintiffs' counsel submits that from "these exchanges," (although only one such exchange is described), and the research he conducted in the

---

[8]Plaintiff's counsel described the individuals as "one portly, tall, grey haired [man] in his early fifties" and another "balding, regular build individual with glasses." No names or dates of employment were provided by counsel as he did not write down the same.

-13-

Warner Lambert litigation, he obtained "a reasonable understanding that there is a cause of action against the employer." He, nevertheless, fails to identify which employer he is referring to.  Mr. Rodríguez-García summarily concludes such inquiry was reasonable to justify the action in the case at bar.  Plaintiffs' counsel further averred that he has had many interviews and meetings with the named plaintiffs of the case and that he was told that donning and doffing procedures, as well as regular and second meal periods and overtime "were similar if not identical in other Bristol Myers plants."

In said motion plaintiffs' counsel insisted in his request for class certification and attempted to justify his early request for court sponsored notice as well as his discovery efforts to obtain the names and addresses of "similarly situated" employees.  Furthermore he unqualifiedly denied the merits of co-defendant's contentions and submitted plaintiffs' contentions were "well warranted by existing statute and jurisprudence."  Counsel, however, failed to provide to the Court exactly which statute or case provides support for the contentions specifically called into question by co-defendants, particularly those related to joinder, standing and the FMLA.

On July 1, 2005 the Court ordered co-defendants to, *inter alia*, "provide a detailed breakdown of the man-hours invested by each person for which reimbursement is requested as to each co-defendant and the duties performed for which the reimbursement is sought."  See Dkt. No. 108.  Co-defendants complied with this order on July 18, 2005.  See Dkt. No. 111.  On August 1, 2005, plaintiffs' requested an enlargement of time to file their opposition, see Dkt. No. 113, and were granted until August 12, 2005, to submit the same.  See Dkt. No. 115.  As noted above, plaintiffs failed to file a timely opposition, notwithstanding the Court's express warnings as to time compliance provided in  prior extensions.

-14-

## RULE 11 STANDARDS AND ANALYSIS

Rule 11 provides, in relevant part, that

[b]y presenting the to the Court . . . a pleading, written motion or other paper, an attorney or other unrepresented party is certifying that to the best of the persons' knowledge, information and belief, formed after an inquiry reasonable under the circumstances, (1) it is not being presented for any improper purpose . . . ; (2) the claims, defenses and other legal contentions are warranted by existing law . . . ; the allegations and other legal contentions have evidentiary support . . . .

Fed. R. Civ. P. 11(b).

"It is now clear that the central purpose of Rule 11 is to deter baseless filings in the District Court and thus, consistent with the Rule Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990).

As noted by the Supreme Court in Cooter & Gell v. Hartmarx Corp., determining whether an attorney has violated Rule 11 involves consideration of three types of issues: (1) factual issues regarding the nature of the attorney's pre-filing inquiry; (2) legal issues raised in considering whether a pleading is "warranted by existing law or a good faith argument" for changing the law and whether the attorney's conduct violated Rule 11; and (3) discretionary issues in determining the "appropriate sanction." 496 U.S. at 399. The Court's determination regarding the same are subject to review for abuse of discretion. See id. at 405. The Court herein addresses each issue separately.

At the outset, the Court notes that the fact of plaintiffs' voluntary dismissal against Lilly and SB Pharmco does not deprive it of jurisdiction to entertain the Motion for Sanctions inasmuch as it does not expunge the Rule 11 violation, particularly when plaintiffs' counsel failed to employ the Rule's safe-harbor provision when given an opportunity to do so. See id. at 395.

-15-

## A. The Pre-filing Inquiry

"Rather than mandating an inquiry into purely legal questions . . . [Rule 11] requires a court to consider issues rooted in factual determinations. . . ." Id. at 401.  In order to determine whether an attorney's pre-filing inquiry was reasonable, "a court must consider all the circumstances of a case." Id.  To this end, the Supreme Court has stated that "an inquiry that is unreasonable when an attorney has months to prepare a complaint may be reasonable when he has only a few days before the statute of limitations runs." Id. 401-02.

As narrated above, after having been provided opportunity to respond, and various extensions of time to do so, Mr. Rodríguez-García described his pre-filing inquiry.  The Court finds the efforts described by Mr. Rodríguez-García extremely sparse and, it must be noted, rather preocupating.  As it appears from the evidence brought to the Court's attention by Mr. Rodríguez-García himself, as well as representations made in previous motions, he sought to sue a large part of the Puerto Rico pharmaceutical industry for alleged FLSA, FMLA and Act 379 violations on the basis of (1) unspecified information obtained from inquiries made to the Pharmaceutical  Industry Association in Puerto Rico, (2) unspecified research conducted during the course of the Warner Lambert litigation and (3) the statements of two unnamed Lilly employees who did not retain his services and are not named plaintiffs in the instant case.[9]  Notably, other than the aforementioned averments, plaintiffs' counsel failed to provide any affidavits setting forth factual pre-filing research.

As an exhibit to his opposition, plaintiffs did provide copy of a Memorandum dated September 30, 2004 presumably circulated among employees of the Bristol-Barceloneta facility

---

[9]The Court reaches this conclusion on the basis of counsel's statements that he could not  recall their names and that the potential clients  failed to later contact him.  One can only presume that, had they been named plaintiffs, counsel would have been able to know their identities and/or the clients would have subsequently contacted counsel.

-16-

which, among other things, reminds employees that they are to don their uniforms after clocking-in

and doff them before clocking-out.  This document, in it of itself, does not establish any kind of

FLSA or Act 379 violation or reasonably provides for any inference, but rather just the opposite, not

to mention the fact that it was issued various months after the filing of the instant lawsuit and

logically could not have influenced counsel's pre-filing investigation.

Plaintiffs' counsel also included as exhibits to his opposition identical verified statements

by 10 employees of BMS in *Barceloneta* describing wage and hour practices at said facility.  While

the verified statements might provide a degree of support to the Complaint's allegations with respect

to Bristol-Barceloneta, the Court finds no reasonable inference can arise from the aforementioned

information in support of the allegations included in the Complaint against any of the other named

defendants, including Lilly, SB Pharmco or the remaining BMS companies.

In sum, the Court finds that in filing the instant action against Lilly, SB Pharmco and the

Bristol-Manatí, Bristol-Humacao and Bristol-Mayagüez defendants attorney Rodríguez-García

violated the mandate of Rule 11 inasmuch as he failed to conduct "an inquiry reasonable under the

circumstances." Plaintiffs' counsel has not suggested that he had little time to prepare the Complaint

of reference.  Curiously, the docket reveals that almost three months lapsed between the initial filing

and the first amendment to the Complaint.  This passage of time constitutes more than sufficient time

to investigate factual and legal contentions.  In any event, regardless of the amount of time plaintiffs'

counsel might have had to research plaintiffs' claims, there are not facts on the record warranting

his proceeding against Lilly, SB Pharmco, Bristol-Manatí, Bristol-Humacao and Bristol-Mayagüez

on the basis of inquiries to the Pharmaceutical Industry Association, the statements of two

unidentified witnesses, who ultimately did not retain his services, his experience in the Warner

-17-

Lambert litigation, and interviews with employees from Bristol-Barceloneta.  Mr. Rodríguez-García's account of his efforts did no more than confirm critical  inadequacies of factual sufficiency of  pre-filing inquiry as stressed by the moving co-defendants.

### B.  The Applicable Law

Co-defendants have identified numerous short-comings in plaintiffs' pleadings.  The Court, however, focuses on three which strike it as particularly egregious: joinder, standing and the FMLA claims, with the first two being closely related to each other and the issue of conditional certification under 29 USC 216(b). (opt-in mechanism under the FLSA).

The FLSA's statutory language is crystal-clear:  an employee who seeks to recover unpaid minimum wages or overtime must comply under the auspices of § 216(b).  This section expressly states that "[n]o employee shall be  a party plaintiff to any such action unless he gives his consent in writing . . . ."  29 U.S.C. §216(b).  To this effect, the weight of applicable jurisprudence further clarifies that actions by similarly situated plaintiffs to recover unpaid wages, differ significantly from class actions under Rule 23.  See Vanskike v. Peters, 974 F.2d 806, 812 (7th Cir. 1992) (explaining collective actions under the FLSA are governed by 29 U.S.C. §216(b) rather than by Fed. R. Civ. P. 23); Lusardi v. Lechner, 855 F.2d 1062m 1068 n. 8 (3rd Cir. 1988); Kinney Shoe Corp. V. Vorhes, 564 F.2d 859, 862 (9th Cir. 1977); Davis v. Lenox Hill Hospital, 2004 WL 1926086, 4 (S.D.N.Y. 2004) (noting collective actions pursuant to the FLSA are governed by a different legal standard than class actions brought under Rule 23); Zelaya v. J.M. Macias, Inc., 175 F.R.D. 625 (E.D.N.C. 1997) (holding the provisions of Rule 23 are inapplicable to actions brought under Section 16(b)).  As recently as March 18, 2005, this Court noted in Meléndez v. Hershey Puerto Rico, Inc.: "It is imperative that parties understand that the opt-in mechanism of [§ 216(b)] and the opt-out

mechanism of Rule 23(b)(3) differ greatly." 363 F.Supp.2d 10, 14 n.3 (D.P.R. 2005).  To this effect an employee who wishes to join the action must expressly consent to be a member of the same by filing a written consent to that effect.  See id. at 14.  By the same token, the employee's claim for relief does not commence until the written consent to join is filed.  See id.  Thus we find plaintiffs' request for class certification under Rule 23(b)(3) are unwarranted by existing law.  Furthermore, we find that the FLSA statutory language and its interpretative jurisprudence are so clear with respect to this matter that plaintiffs contentions regarding Rule 23 class certification are either completely frivolous or show complete disregard for adequate  legal investigation.  In either case, there exists a clear violation of Rule 11.

## 1. Standing

In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. . . . In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a "case or controversy" between himself and the defendant within the meaning of Art[icle] III [of the Constitution of the United States].  This is the threshold question in every federal case, determining the power of the court to entertain the suit.  As an aspect of justiciability, the standing question is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.  The Art[icle] III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally.  A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered "some threatened or actual injury resulting from the putatively illegal action . . . ."

Warth v. Seldin,  422 U.S. 490, 498-99 (1975) (internal citations omitted).

In the case of the FLSA, only employees have standing to sue their employers.  See 29 U.S.C. § 216(b).  In part responding to excessive litigation spawned by plaintiffs lacking a personal interest in the outcome, the representative action by plaintiffs not themselves possessing claims was

expressly abolished in 1947 by the Portal to Portal Act, and the requirement that an employee file a written consent was added. See 93 Cong.Rec. 538, 2182 (1947) (remarks of Sen. Donnell). "The relevant amendment was for the express purpose of limiting private FLSA plaintiffs to employees *who asserted claims in their own right* and freeing employers of the burden of representative actions." Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 173 (1989). In this case, it has become evident that only employees of one of the BMS defendants have been included as named plaintiffs. From the verified statements, it appears the employees are from Bristol-Barceloneta.

The Court finds that Mr. Rodríguez-García precisely incurred in what the Portal-to-Portal Amendments was specifically designed to eliminate. It is rather clear that Mr. Rodríguez did not have representative plaintiffs for each of the named defendants in the instant case. Notwithstanding, he sought to solve the absence of this critical detail by obtaining them through subsequent discovery and/or court sponsored notice. This is evidently improper and, at least with respect to SB Pharmco and Lilly, constitutes precisely the kind of harassment prohibited by section (b)(1) of Rule 11. It is equally improper and harassing with respect to the BMS companies which do not employ any of the named plaintiffs. See Top Entertainment Inc. v. Ortega, 285 F.3d 115, 118 (1st Cir, 2002) ("Rule 11 of the Federal Rules of Civil Procedure forbids parties and their counsel from alleging factual contentions that lack evidentiary support.").

As noted by this Court in its order of March 29, 2005, "'[t]he Courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation.'" See Dkt. No. 90 (citing Severson v. Phillips Beverage Co., 137 F.R.D. 264, 266-67 (D. Minn. 1991). The Court is profoundly disturbed by what is evidently an unabashed effort on the part of plaintiffs counsel to expand the scope of the present lawsuit by including as defendants

-20-

companies against which he lacked any reasonable basis to sue in the first place and attempting to then obtain from *them* the names of employees to include as plaintiffs.  The Court, however, need not delve too deep into the motives behind plaintiffs' counsel's actions inasmuch as a finding of bad faith is not required to imposed Rule 11 sanctions.  See Fed. R. Civ. P. 11, Advisory Committee Note.  See also Young v. City of Providence, 404 F.3d 33, 40 (1st Cir. 2005); Bermúdez v. 1 World Productions, Inc., 209 F.R.D. 287, 288 (D.P.R. 2002). The record harbors no doubt  that plaintiffs' counsel failed to conduct any of reasonable pre-filing inquiry in connection to the claims against Lilly, SB Pharmco, Bristol-Manatí, Bristol-Humacao and Bristol-Mayagüez.  Such a blasé approach to procedural obligations warrants sanctions.

### 2.  Joinder of Defendants

The Court is equally concerned as to  plaintiffs' counsel's attempt to include without any plaintiffs or any reasonable proof a considerable  portion of the Puerto Rico's Pharmaceutical industry as co-defendants in a single FLSA lawsuit.  Rule 20 of the Federal Rules of Civil Procedure "establishes a procedure under which the demands of several parties arising out of the same litigable event may be tried together, thereby avoiding the unnecessary loss of time and money to the court and the parties that the duplicate presentation of evidence relating to facts common to more than one demand for relief would entail."  7 Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure at §1652.  It provides, in relevant part:

> All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrences and if any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P 20(a).

-21-

Rule 20 limited application imposes two specific requirements: (1) a right to relief must be asserted by or against each plaintiff or defendant relating to or arising out of the same transaction or occurrence and (2) some question of law or fact common to all the parties will arise in the action. See Maldonado Cordero v. AT & T, 190 F.R.D. 26, 28 (D.P.R.1999).   It is obvious that the Amended Complaint meets neither of the two.

As to the first requirement, plaintiffs do not contend, nor can they responsibly do so, that defendants are liable to them jointly, severally or in the alternative.   The FLSA only recognizes causes of action filed by employees against their employers.   See 29 U.S.C. § 216(b).   Hence only a particular plaintiff's employer will be liable to that plaintiff.   If no employment relationship exists, no liability attaches, jointly, severally or in the alternative.   While the Amended Complaint fails to adequately plead each plaintiff's employment relationship, plaintiffs' counsel should at least be aware of the fact that all plaintiffs were not employed by all defendants.

Regarding the second requirement, the appearing defendants submit that inasmuch as the Amended Complaint presents claims against multiple separate employers, plaintiffs' right to relief, if any, does not arise from the same transaction or occurrence.   Each employer's practice with respect to the payment of wages and overtime, and the granting of vacation and sick leave, constitutes a separate transaction or occurrence with distinguishable issues of fact and law.   Compare with Maldonado Cordero, 190 F.R.D. at 28-29 (finding, in a discriminatory failure to promote complaint, that requirement of same transaction or occurrence was established when all plaintiffs worked for same employer).   While FLSA requirements apply to all, the factual nuances differentiate the legal inquiry.   It is particularly clear that  the evidence that will be needed for plaintiffs to attach liability against each defendant is necessarily different and dependent upon each plaintiff's workplace.

-22-

Thus, plaintiffs' counsel joinder of multiple defendants in the instant case is not only improper because of the plaintiffs' lack of standing, it is also improper, at least with respect to SB Pharmco and Lilly, inasmuch as the particularities of a FLSA action preclude this kind of joinder even if employees with standing to sue them had been included as named plaintiffs. Plaintiffs' counsel should have "stopped to think" before proceeding on this enterprise. A careful analysis of the applicable statutory and procedural requirements would have made the folly evident. While plaintiffs eventually dismissed their claims against these co-defendants, their delay in so doing, even after repeated warnings and requests, resulted in the unnecessary accrual of attorney's fees, overall increase in the cost of litigation and delay of proceedings.

### 3. The FMLA Claims

Paragraphs 45 thru 47 of the Amended Complaint allege that plaintiffs are entitled to paid sick leave and vacation time under 29 U.S.C. § 2613. This allegation is not supported by FMLA's clear statutory language or interpretative law.

The FMLA allows eligible employees to take a maximum of 12 weeks of unpaid leave for the birth, adoption or placement in foster care of a child; the care of a seriously ill child, spouse or parent; or the employee's own serious illness. See 29 U.S.C. § 2601, *et seq.* Not all employees are covered by the FMLA. The law sets a minimum length-of-service and hours work requirement that employees must satisfy. It is firmly established law that, before an employee becomes eligible for leave under the FMLA, he or she must first be employed by an employer of at least 50 employees within 75 miles of his or her worksite. See 29 U.S.C. § 2611. He or she must also have been employed by the same employer for at least 12 months and must have worked at least 1,250 hours during the 12 months preceding the leave. Id.

-23-

The Amended Complaint, however, fails to plead a number of significant elements under the law:  among them, (1) that each plaintiff is an eligible employee under the law; (2) that each defendant is covered by the law; and, (3) that each plaintiff was entitled to FMLA leave.  See  De Hoyos v. Bristol Laboratories Corp, 218 F.Supp.2d 222, 224 (DPR 2002).  This failure, once again reveals counsel's failure to investigate and conduct a reasonable inquiry into whether each named plaintiff has a legal basis for requesting relief under the FMLA.  This paucity runs afoul of the mandate of Rule 11 and results in the engaging of unnecessary procedures for all parties and the court.

This violation relates to all of the moving co-defendants, inasmuch as, even with respect to Bristol-Barceloneta, neither the allegations of the Amended Complaint nor plaintiffs' counsel's statements regarding his pre-filing inquiry reveal any reasonable basis to conclude that the appearing plaintiffs have claims under the FMLA.  Counsel's lapse of judgment becomes even more blatant when one considers that the Amended Complaint requests relief for matters that are not even contemplated by the FMLA:  paid vacation and sick leave.  See Amended Complaint at ¶¶ 35, 46-47.  In this regard, the citation included in the Amended Complaint, that is, 29 U.S.C. 2613, see Amended Complaint at ¶ 46, refers to the content of the medical certification an employer may request of an employee soliciting FMLA and does not establish any obligation for payment of sick or vacation time.  Not only is the FMLA statute transparently clear as to the relief afforded thereunder, there is an abundance of case law to which plaintiffs' counsel, in the proper exercise of his obligations, could have referred before advancing such patently unwarranted allegations.[10]

---

[10] The court grants that  plaintiff may recuperate vacations and/or sick leave under local law, P.R. Laws Ann. Tit. 29§ 250 et sec. under supplemental jurisdiction, 29 USC 1367 et sec.,  however, the troubling matter is that the request was made under federal law FMLA, 29 USC 613. Curiously, if there are vacations in reality owed to the employees, plaintiffs' claims under local law are more

-24-

## C.  Conclusion and Appropriate Sanction

Our judicial system provides every individual with the privilege of its resources and power. By the sole fact of presenting a Complaint in Federal Court, a plaintiff is granted the "muscle" to force a defendant to come before the Court and respond to his/her allegations and assume all the attending costs such an appearance requires.  Such a privilege, however, carries a concomitant responsibility; a responsibility expressly placed on both litigants and their counsel through  Rule 11 of the Federal Rules of Civil Procedure.  By filing the instant cause of action, plaintiffs in this case sought to partake of this privilege.  In so doing,  counsel for plaintiff  attempted to bring a large part of the local pharmaceutical industry before this court in order to reckon for their wage and hour practices. In so doing, however, counsel failed to  comply with the duties inherent to the privilege. Plaintiffs' counsel's grand scheme was destined to inevitable failure from the beginning, but co-defendants were nevertheless obligated by the law to make an appearance and incur in the expenses and costs of defending against a suit utterly lacking in factual support.  Such proceeding should not be condoned by the Court and hence warrant the imposition of sanctions.

The Court agrees with co-defendants, and finds that the conduct displayed by the attorney for plaintiffs is sanctionable, his pre-filing failed and legal inquiry was grossly inadequate.  The Court is convinced that plaintiffs' counsel actions have "surpassed the threshold of mere negligence, inadvertence, or incompetence."  Bermudez v. 1 World Productions, Inc., 209 F.R.D. 287, 291 (D.P.R. 2002). "[A] sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. [T]he sanction

attractive since double penalty is applicable both under law as an employee is forced to make a judicial claim, and under the Mandatory Decree if the vacations are owed in excess of two years.

-25-

may consist of, or include, ... if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed. R. Civ. Pro. 11(c)(2).  In fashioning the appropriate sanction, the district court must also consider whether the complained of actions were brought promptly to its attention (a question of mitigation).  See Jackson v. Lawfirm of O'Hara, Ruberg, Osborne & Taylor, 875 F.2d 1224,1230 (6th Cir. 1989). It is clear that co-defendants have continually attempted to terminate this litigation at an early stage and also promptly brought a request for Rule 11 sanctions.

Despite the Court's authority to do so, the Court shall not impose a sanction equivalent to the opposing attorneys' reasonable attorney's fees.  See Silva v. Witschen, 19 F.3d 725, 733 (1994)(costs incurred in litigating request for Rule 11 sanctions in district court recoverable as part of Rule 11 sanction);  Robinson v. Dean Witter Reynolds, Inc., 129 F.R.D. 15, 22 (D.Mass.1989). The amount of expense borne by opposing counsel in combating frivolous claims may well be an appropriate factor for a district court to consider in determining whether a monetary sanction should issue and if so, in what amount.  However, it is clear that the primary, or "first" purpose of Rule 11 is to deter future litigation abuse. A district court can and should bear in mind that other purposes of the rule include "compensating the victims of the Rule 11 violation, as well as punishing present litigation abuse, streamlining court dockets and facilitating court management." White v. General Motors Corp., 908 F.2d 675 (10th Cir.1990).

-26-

Accordingly, the Court has performed and independent analysis of the evidence submitted in support and opposition[11] to the sanctions request and has carefully reviewed co-defendants' attorneys' attested time and invoices with due circumspection.  The Court has further considered in addition to the issues presented by the co-defendants, the fact that as a result of plaintiffs' counsel conduct the case has been practically inactive for over a year without any significant progress provoking the squander of a significant amount of resources and the waste of valuable time. Moreover, the Court has also considered the fact that the complaint has been amended on three separate occasions[12] without even attempting to correct the numerous mistakes that have been clearly noticed by co-defendants.  Finally, the Court has taken into account plaintiffs' counsel failure to timely oppose both the initial request for sanctions and the supplement itemization of expenses and hours billed.

Consequently, after a careful review of the evidence submitted the Court finds that defendants SB Pharmco and Eli Lilly are entitled to $8,000[13] each in attorney's fees for work performed in this case. The Court deems this amount is suitable for its purposes with respect to the specific conduct proscribed in Rule 11. In so deciding, the Court has reduced considerably the amounts requested by these two defendants.  As to Bristol-Manatí, Bristol-Humacao and Bristol-Mayagüez, considering that they were brought in to the case months after SB Pharmco and Lilly and

---

[11]We note that plaintiffs nor their legal counsel have presented  evidence concerning their financial condition, nor have they alleged financial inability to satisfy the sanction requested. See White v. General Motors Corp., Inc., 908 F.2d 675, 685 (10th Cir.1990) ("[i]nability to pay what the court would otherwise regard as an appropriate sanction should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status"), cert. denied, 498 U.S. 1069 (1991).

[12]  The last time without leave of this Court.

[13]The amount of fees in defending the claim by these two parties (SB Pharmco and Eli Lilly) at this time exceeds fifty thousand dollars.

-27-

further Bristol defendants  joined in the Rule 11 request for sanctions later in the case, the amount hereby imposed in sanctions is $4,000[14] to be divided among them.   This assessment further takes into consideration that the Docket seems to reveal that plaintiffs' may have a  colorable claim exclusively against the Bristol facility located in Barceloneta, Puerto Rico.  These amounts are to be paid in full within sixty (60) days of the entry date of this Order.

Pursuant to Rule 11, a court may impose on an attorney the personal obligation of paying the opposing parties' attorney's fees, as sanctions for irresponsibly, willfully, and incompetently initiating a cause of action.  See Bermudez v. 1 World Productions, Inc., 209 F.R.D. at 289. Accordingly, and taking into consideration the conduct exhibited in this case and the many opportunities that have been afforded to plaintiffs' counsel, the Court hereby orders that the sanctions be paid exclusively by counsel Rodríguez-García to the co-defendants as indicated above.

Finally, the Court further ORDERS plaintiffs to present an amended complaint on or before October 17, 2005.  Said amended complaint must specifically identify the defendant against which it intends to continue prosecuting the case and must further take into consideration the findings herein made as to the frivolousness of the allegations regarding FMLA.  The Court further invites plaintiffs' counsel to evaluate all of the issues raised by co-defendants Motion for Rule 11 Sanctions. The fact that some of the issues are not discussed in this order does not render plaintiff's allegations regarding the same inappropriate.  The Court further takes note of plaintiffs abandoning of their initial class certification request.  See Dkt. No. 114.  Accordingly, the caption and amended complaint to be filed must identify and incorporate each plaintiff by name. In doing so, the court

---

[14]The amount actually spent by Bristol defendants in lawyers fees in  defending  the case exceeds fifteen thousand dollars.

-28-

forewarns plaintiffs' counsel to include only those plaintiffs which have specifically retained him as legal counsel and who may  wish to continue prosecuting this matter.

WHEREFORE, co-defendants Motion for Rule 11 Sanction are hereby GRANTED as discussed in this Opinion and Order.  The Court further ORDERS plaintiffs to file an amended complaint consistent with the directives herein stated by **October 17, 2005.**

IT IS SO ORDERED.

At San Juan, Puerto Rico, this 28 day of September 2005.


s/Daniel R. Domínguez
**Daniel R. Domínguez**
**U.S. District Judge**